UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| URIAH MARQUIS PASHA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 18-595-DCR |
| | ) | |
| v. | ) | |
| | ) | |
| JESSICA PAYTON, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Uriah Pasha is confined at the Kentucky State Penitentiary ("KSP") in Eddyville, Kentucky. Proceeding without an attorney, he has filed a civil rights action against prison officials at the Northpoint Training Center ("Northpoint"), located in Burgin, Kentucky, pursuant to 42 U.S.C. § 1983. The Court now conducts a preliminary review of Pasha's Complaint pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A.[1]

The Court evaluates Pasha's complaint under a more lenient standard because he is not represented by an attorney. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003). At this stage, the Court accepts the plaintiff's factual allegations as true, and his legal claims are liberally construed in his favor. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Even so, the principles requiring generous construction of *pro se* pleadings are not without limits. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *Roberts*

---

[1] The Court must dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *McGore v. Wrigglesworth*, 114 F.3d 601, 607-08 (6th Cir. 1997). A complaint is subject to dismissal as "frivolous" where "it lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

*v. Lexington Fayette Urban County Government*, No. 07-cv-95-KSF, 2007 WL 1136743 (E.D. Ky. April 16, 2007). The Court is not required to create a claim for the plaintiff, nor to "conjure up unpled allegations." *Moorman v. Herrington*, No. 4:08-CV-P127-M, 2009 WL 2020669, at *1 (W.D. Ky. July 9, 2009)(citations omitted). Moreover, vague allegations that one or more of the defendants acted wrongfully or violated the plaintiff's constitutional rights are not sufficient. *Laster v. Pramstaller*, No. 08-CV-10898, 2008 WL 1901250, at *2 (E.D. Mich. April 25, 2008).

## I.

The original Complaint [Record No. 1] included claims brought by Pasha and Blane Seeber. However, the Court previously determined that the plaintiffs' claims were improperly joined and severed those asserted by Seeber. [Record No. 7] In addition, because Pasha's Complaint was not filed on a form allowable under Local Rule 5.2(a)(4), the Court forwarded the appropriate form to Pasha and directed him to re-file his Complaint in compliance with the requirements of the Court. [*Id.*]

Although Pasha has now re-filed a Complaint on the Court's form, rather than complete the form as directed, he incorporated his original Complaint by reference (with the exception of Seeber's claims that were severed from this action). He then makes new allegations regarding events that occurred after he was transferred to KSP. [Record No. 14] Although this approach does not comply with the Court's Order directing him to re-file his Complaint on the appropriate form, the Court will nevertheless review the claims alleged by Pasha in both his original and amended Complaints. For clarification, because the majority of Pasha's claims are set forth in his original Complaint [Record No. 1], unless specified otherwise, the Court will refer to that document.

Pasha's original 30-page Complaint includes over 132 numbered paragraphs and sets forth an exhaustive account of multiple events occurring at Northpoint from approximately May 2018 through Pasha's transfer to KSP in approximately October 2018. Pasha asserts various constitutional claims under 42 U.S.C. § 1983 against 15 different defendants, including various correctional officers, medical providers, and administrative staff at Northpoint, as well as James Erwin, Commissioner of the Kentucky Department of Corrections ("KDOC"). The defendants are sued in their individual and official capacities.

Although Pasha's factual allegations sweep broadly and relate to multiple separate incidents, he narrows the nature and basis of the claims that he seeks to assert in the "Claims for Relief" section of his Complaint. [Record No. 1 at ¶¶111-132] As pled by Pasha, his claims may be summarized as follows:

1) Defendant Michelle Weigel (the Legal Library Officer at Northpoint) deprived him access to copies of legal documents in violation of prison regulations and the First and Fourteenth Amendments of the United States Constitution. [*Id*. at ¶114]

2) Defendants Davis Brown (security officer at Northpoint), Lee N. May (a Sergeant at Northpoint), and William Miller (the Internal Affairs Officer at Northpoint) subjected him to unlawful use of excessive physical force on multiple occasions in violation of the Eighth and Fourteenth Amendments. [*Id*. at ¶¶115, 118][2]

3) Defendants Michael Long (Corrections Security Lieutenant at Northpoint) and Mrs. Rainwater (Corrections Security Sergeant at Northpoint) subjected him to cruel and

---

[2] Although Seeber also alleged an excessive force claim against defendant Brett Shearer (security officer at Northpoint) [Record No. 1 at ¶113], this claim was severed from this action.

unusual punishment in violation of the Eighth and Fourteenth Amendments by watching and laughing as Pasha was sexually abused. [*Id*. at ¶117]

4) Defendants Long, Rainwater, Margaret Franchere (contractually employed nurse at Northpoint), Pond, Brown, Shearer, Jessica Payton (Administrative Section Supervisor at Northpoint), Stephanie Thompson (Medical Administrator at Northpoint), James Erwin (Commissioner of the KDOC), Mendalyn Cochran (Deputy Warden of Security at Northpoint), Craig Hughes (Deputy Warden of Operations at Northpoint), James Smith (Correction Security Lieutenant at Northpoint), May, Miller, and Brad Adams (Warden at Northpoint), on multiple occasions, acted with deliberate indifference to his serious medical needs in violation of the Eighth and Fourteenth Amendments. [*Id*. at ¶¶119-122, 124-126, 128-132]

5) Defendants Brown and Shearer subjected him to sexual contact while he was incapable of consent in violation of KRS § 510.110. [*Id*. at ¶116]

6) Defendant Payton's finding that his claim alleging a violation of the Prison Rape Elimination Act ("PREA"), 42 U.S.C. § 15601 *et seq*., was unsubstantiated, then her later amendment of findings to "unfounded," is in violation of the First, Eighth and Fourteenth Amendments. [*Id*. at ¶123]

7) Defendant Erwin's response to one of his grievances was inadequate in violation of the First, Eighth, and Fourteenth Amendments. [*Id*. at ¶127]

8) Defendants Erwin, Cochran, Payton, Thompson, Hughes, and Adams transferred him to KSP, a maximum-security facility, with a custody score of eight in retaliation

for filing a PREA complaint against staff in violation of the First, Eighth, and Fourteenth Amendments. [*Id*. at ¶111]

9) Defendants Erwin, Cochran, and Adams assigned Brown to a duty post in Northpoint's general population supervising inmates during a period in which Brown had criminal charges of assault and related offenses pending in the Boyle Circuit Court in violation of the Eighth and Fourteenth Amendments. [*Id*. at ¶112]

Pasha's Amended Complaint alleges that, after his transfer to KSP, Psychologist Keith Feck, MS, referred him to CPTU to participate in the PRIVE Program. [Record No. 14 at p. 3] Pasha also alleges that at KSP, he has been "forced to shower in an Open Bay where a Corrections Officers sits in a booth and watches Plaintiff Pasha shower, as if it were a Peep-show." [*Id*.] He states that he filed a grievance and was instructed to contact mental health. [*Id*.] Although he followed these instructions, mental health has not responded to his request, nor has he been issued any low-cut work-shoes or a hearing device. [*Id*.]

Pasha's Amended Complaint does not name any additional defendants, nor does it purport to bring any separate constitutional claims based on these allegations of events occurring since his transfer to KSP.[3] Nor does Pasha's Amended Complaint include any additional allegations of conduct by any of the previously-named defendants. Rather, it incorporates the claims previously made against the defendants in the original Complaint.

---

[3] Even if Pasha's amended complaint had asserted additional claims for relief based on events occurring after his transfer to KSP, the KSP is located in Eddyville, Kentucky, which is in the judicial district of the United States District Court for the Western District of Kentucky. Pursuant to 28 U.S.C. § 1391(b), a plaintiff must file a civil rights action in a judicial district where one defendant resides if all defendants reside in the same state, or in a district where a substantial part of the relevant events occurred. Thus, the proper venue for a complaint alleging claims related to events occurring at KSP would be the United States District Court for the Western District of Kentucky. 28 U.S.C. §§ 1391(b), 1402(b).

[Record No. 14 at p. 3-4]  Thus, to avoid confusion, going forward, the Court will disregard the additional allegations contained in the Amended complaint and consider only the original Complaint as the operative pleading, limiting analysis to the affirmative claims for relief alleged therein.

The Court has conducted an extensive review of the original Complaint and its attachments and concludes that some of the defendants must be served with process to address the claims alleged against them.  However, as explained more fully below, some of the claims and/or defendants will be dismissed from this action because the allegations in the Complaint do not state a claim against them for which relief may be granted.

## II.

First, claims will be dismissed to the extent that Pasha seeks to assert them against the defendants in their "official capacities."  Notwithstanding its label, an "official capacity" claim against a state officer is not a claim against the officer arising out of his or her conduct as an employee of the state but is actually a claim directly against the state agency which employs them.  *Lambert v. Hartman*, 517 F.3d 433, 439-40 (6th Cir. 2008); *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) ("While personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law, individuals sued in their official capacities stand in the shoes of the entity they represent.") (internal quotation marks omitted).  Pasha's official capacity claims are therefore civil rights claims against KDOC.  However, KDOC is not subject to suit under § 1983 in federal court, both because a state agency is not a "person" subject to liability under § 1983, and because the Eleventh Amendment deprives federal district courts of subject matter jurisdiction over a claim for money damages against a state and its agencies.  *Gibbons v. Kentucky Dept. of Corrections*,

No. 3:07CV-P697-S, 2008 WL 412847, at *1 (W.D. Ky. Sept. 4, 2008) (*citing Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 687-88 (1993) ("Absent waiver, neither a State nor agencies acting under its control may be subject to suit in federal court.") (internal quotation marks and citation omitted)); *Scott v. Kentucky Department of Corrections*, No. 08-CV-104-HRW, 2008 WL 4083002, at *2 (E.D. Ky. Aug. 29, 2008) ("the Eleventh Amendment has also been interpreted to extend immunity to State employees sued for damages in their official capacities."). Therefore, all of the § 1983 claims against the defendants in their official capacities will be dismissed.

A. Claims against Weigel related to Use of the Prison Law Library

Pasha alleges that on May 22, 2018, he asked Weigel, the Legal Library Officer at Northpoint, to send a copy of the Glossary for the KDOC Policies and Procedures Manual. [Record No. 1 at ¶7] He alleges that she then cited Pasha with a Disciplinary Report for asking her to contact another facility. [*Id*. at ¶ 8] According to Pasha, after this Disciplinary Report was dismissed without a hearing [*Id*. at ¶10], Weigel began enforcing policies related to copies by inmates by refusing to make copies for Pasha (who did not have the funds to pay for copies) "unless he would mail them out of the facility through her via Privileged Mail immediately after the copies were made." [*Id*. at ¶¶11-15] Pasha seeks to bring a claim against Weigel based on these allegations for "depriving Pasha access to copies of legal documents in violation of 501 K.A.R. 6:030 Policy CPP 14.4," as well as the First and Fourteenth Amendments of the United States Constitution. [*Id*. at ¶114]

To the extent that Pasha's claim is based on Weigel's alleged violation of 501 K.A.R. 6:030 Policy CPP 14.4, "[i]t has long been established that the violation of a state statute or regulation is insufficient alone to make a claim cognizable under § 1983." *Stanley v. Vining*,

602 F.3d 767, 769 (6th Cir. 2010).  Pasha's allegations that Weigel interfered with his ability to make copies could be broadly construed to implicate his right of access to the Courts guaranteed by the First and Fourteenth Amendments.  The constitutional right of access to the courts "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977).  By its terms, the right of access to the courts extends only to an inmate's direct criminal appeal, habeas corpus applications, and civil rights claims related to the conditions of confinement.  *Lewis v. Casey*, 518 U.S. 343, 354-55 (1996).  *See also Lewis v. Randle*, 66 F. App'x 560, 561–62 (6th Cir. 2003).  "Impairment of any *other* litigating capacity is simply of the incidental (and perfectly constitutional) consequences of conviction and incarceration.  *Lewis*, 518 U.S. at 355.

To state a claim for denial of access to the courts, a plaintiff must show actual injury to a nonfrivolous legal claim.  *Lewis*, 518 U.S. at  353-55 (1996).  "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005).  *See also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) ("Plaintiffs must demonstrate, for example, that the inadequacy of the prison law library or the available legal assistance caused such actual injury as the late filing of a court document or the dismissal of an otherwise meritorious claim." ).  It is not enough for a plaintiff to complain in the abstract of the alleged insufficiency of the prison law library; rather; instead, the inmate must demonstrate that he suffered an actual injury because the defendants' conduct prevented or hindered his efforts to pursue a particular non-frivolous legal claim.  *Hadix v. Johnson*, 182 F. 3d 400, 404-06 (6th Cir. 1999); *Barnett v. Luttrell*, 414 F. App'x 784, 787 (6th Cir. 2011).

Here, Pasha fails to identify or refer to any particular case, whether already pending or anticipated to be filed, or to describe any particular legal claim that he was hindered or prevented from asserting because of Weigel's alleged conduct which he claims improperly restricted his ability to make copies. The failure to plead these necessary allegations in his Complaint with sufficient particularity requires dismissal of his access-to-courts claim against Weigel. *Brown v. Matauszak*, 415 F. App'x 608, 612 (6th Cir. 2011) (adequate pleading of access-to-courts claim requires allegation of actual injury to specific claim, allegation of the facts and the law in the underlying claim, and demonstration that underlying claim was non-frivolous) (citing *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)); *Clark v. Johnston*, 413 F. App'x 804, 812 (6th Cir. 2011). Accordingly, Pasha's claim against Weigel will be dismissed.

B. Pasha's Eighth Amendment Claims

Pasha's Complaint alleges several separate claims based on allegations of the use of excessive force or deliberate indifference to his serious medical needs, each of which he alleges constitute "cruel and unusual punishment without due process" in violation of the Eighth and Fourteenth Amendments of the United States Constitution. [Record No. 1 at ¶¶111-113, 114, 117-122, 124-126, 128-132] But Pasha's allegations do not support claims under the Fourteenth Amendment because he does not allege that he was treated differently than any other persons similarly situated to him. Moreover, the Supreme Court has expressly held that, where a constitutional claim is covered by a specific constitutional provision, the claim must be analyzed under the standard appropriate to that specific provision and not under the broad rubric of substantive due process. *County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998); *see also Graham v. Connor*, 490 U.S. 386, 395 (1989) ("Where a particular Amendment

provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.").  Thus, although Pasha references the due process clause of the Fourteenth Amendment, the Eighth Amendment is the proper vehicle to assert his claims of excessive force and deliberate indifference to his serious medical needs. *See Cooleen v. Lamanna*, 248 F. App'x 357, 362 (3rd Cir. 2007) (viability of claim under Eighth Amendment to challenge medical care of prisoner forecloses availability of substantive due process claim).

The Eighth Amendment prohibits any punishment which violates civilized standards of decency or "involve[s] the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976) (internal quotation marks and citation omitted).  An Eighth Amendment claim has both an objective and subjective component: (1) a sufficiently grave deprivation of a basic human need; and (2) a sufficiently culpable state of mind. *Wilson v. Seiter,* 501 U.S. 294, 298 (1991).  Thus, to state a viable Eighth Amendment claim, an inmate must allege that a prison official: 1) was actually aware of a substantial risk that the plaintiff would suffer serious harm; and 2) knowingly disregarded that risk. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

    1.  Excessive Force/Abuse Claims

Pasha alleges that, on or around July 11, 2018, Sergeant May and Officer Miller escorted him to the Restrictive Housing Unit ("RHU") using an illegal use of force called a "chicken wing," which involves the officers putting their arms underneath a prisoner's arms and raising the prisoner's arm above his head and shoulder while bending him over at the waist and cutting off the prisoner's air supply.  [Record No. 1 at ¶¶17, 27]  He further alleges that,

on or around August 5, 2018, he suffered chest pains and required transportation from the RHU's visitation room to Northpoint's medical department for assessment. [*Id*. at ¶¶38-39] According to Pasha, when Brown arrived to escort him to medical, Pasha requested a wheelchair, but was told by Lieutenant Smith that there were none available in the RHU and that he would have to walk to medical. [*Id*. at ¶40] While Brown was escorting Pasha, Pasha alleges that he became dizzy and fell to the ground, at which point Brown reached down, grabbed Pasha by the shoulder of his uniform shirt and began to drag him down the ramp back to the RHU's front door over a concrete walkway, allegedly causing physical injuries. [*Id*. at ¶¶40-44, 54] Based on these claims, Pasha alleges that May, Miller and Brown used excessive force against Pasha in violation of his rights under the Eighth Amendment. [*Id*. at ¶¶115, 118] The Court has reviewed these allegations and finds that they are sufficient to warrant a response by May, Miller and Brown.

Pasha further alleges in connection with the incident on August 5, 2018, that after he was dragged down the ramp by Brown, Lieutenant Long, Sergeant Rainwater, and Shearer arrived at the RHU gate to assist Brown. [*Id*. at ¶47] According to Pasha, Long made the decision to carry Pasha to the medical department. [*Id*. at ¶47] Pasha alleges that, while he was being carried, he was dropped next to red pools of water, his pants and underwear were pulled down to his knees, and he was standing on his head with his feet resting on Shearer's upper body near his shoulders. [*Id*. at ¶48] Pasha alleges that, while he was being carried, he was in five-point restraints, causing him to be physically helpless and unable to give consent, yet he felt something touch his anus. [*Id*. at ¶49] Based on these allegations, he asserts a tort claim of sexual abuse in violation of Kentucky law against Brown and Shearer. [*Id*. at ¶116]

The Court has reviewed these allegations and finds that they are sufficient to warrant a response from Brown and Shearer.

Pasha asserts a separate Eighth Amendment claim against Long and Rainwater for allegedly watching and laughing as Pasha was subjected to sexual abuse. [*Id.* at ¶117] However, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson,* 832 F.2d 950, 955 (6th Cir.1987). Indeed, "[v]erbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief." *Wingo v. Tenn. Dep't of Corr.,* 499 F. App'x 453, 455 (6th Cir. 2012) (citing *Ivey,* 832 F.2d at 955). "Just as the Constitution 'does not mandate comfortable prisons,' it does not mandate polite prison guards or officials or fellow inmates. Derogatory or abusive language and conduct do not give rise to a claim under § 1983." *Ishaaq v. Compton*, 900 F. Supp. 935, 944 (W.D. Tenn. 1995) (quoting *Wilson,* 501 U.S. at 298) (other citations omitted).

Moreover, 42 U.S.C. § 1997e(e) provides, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." The United States Court of Appeals for the Sixth Circuit has repeatedly found Eighth Amendment claims for monetary relief precluded by 42 U.S.C. § 1997e(e) absent a showing of physical injury. *See Jennings v. Weberg,* No. 2:06–CV–235, 2007 WL 80875, at *3 (W.D. Mich. Jan. 8, 2007) (collecting cases). "[E]ven though the physical injury required by § 1997e(e) for a § 1983 claim need not be significant, it must be more than *de minimis* for an Eighth Amendment claim to go forward." *Flanory v. Bonn,* 604 F.3d 249, 254 (6th Cir. 2010). Because Pasha makes no allegation that he suffered physical injury as a direct result of the alleged verbal harassment by Long and

Rainwater, his Eighth Amendment claim against them based on this conduct will be dismissed. 42 U.S.C. § 1997e(e).

   2.   Claims of Deliberate Indifference to Pasha's Serious Medical Needs

Pasha's Complaint sets forth several separate incidents that he alleges give rise to claims of deliberate indifference to his serious medical needs in violation of the Eighth Amendment. However, personal liability in a § 1983 action hinges upon the defendant official's personal involvement in the deprivation of the plaintiff's civil rights. *Nwaebo v. Hawk-Sawyer*, 83 F. App'x 85, 86 (6th Cir. 2003); *Polk County v. Dodson*, 454 U.S. 312, 325-26 (1981). Accordingly, notice pleading requires, at a minimum, that the complaint advise each defendant of what he allegedly did or did not do that forms the basis of the plaintiff's claim against him. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008). The Court has reviewed Pasha's claims of deliberate indifference to his serious medical needs and finds that some of the allegations are sufficient to warrant a response from the defendants against whom these claims are alleged, but some claims and/or defendants will be dismissed because Pasha fails to allege that these defendants were personally involved in the alleged deprivation of his rights.

Pasha claims that the collective decision not to use a wheelchair to transport him from the RHU to the medical department after he experienced chest pains on August 5, 2018 resulted in physical injuries and constitutes deliberate indifference to his serious medical needs. [Record No. 1 at ¶¶119-121, 128] To the extent that he alleges this claim against Brown, Long, Rainwater, Shearer, and Smith, the Court has reviewed the allegations and concludes that a response is warranted from these defendants.

However, he does not allege that Franchere was involved in the decision to transport him to the medical department without a wheelchair. To the contrary, Pasha asserts that Franchere attempted to bring a wheelchair to the RHU to transport Pasha but was instructed by Brown to take it back. [*Id.* at ¶45] Thus, Pasha's allegations are insufficient to support a deliberate indifference claim against Franchere arising from the decision to transport him without a wheelchair. [*Id.* at ¶120] Moreover, his allegations directly refute a claim that Franchere acted with deliberate indifference by failing to respond to his medical emergency of chest pains without the required medical equipment because Pasha alleges that she did, in fact, attempt to bring a wheelchair to assist him. [*Id.* at ¶¶45, 121]

Pasha's "claims for relief" also asserts a claim against "Pond," although there is no Pond identified as a defendant in Pasha's Complaint, nor are there any factual allegations of any conduct by "Pond." [*Id.* at ¶120] Thus, Pasha's Eighth Amendment claim against Pond will be dismissed.

Pasha alleges that, on August 16, 2018, he was scheduled to receive mental health treatment from an advocate from the Bluegrass Rape Crisis Center, but Payton denied entry by the advocate who arrived at Northpoint to treat Pasha. [*Id.* at ¶¶81-82, 122] Based on this contention, Pasha asserts a claim against Payton for deliberate indifference to Pasha's serious medical needs. [*Id.* at ¶122] The Court has reviewed these allegations and finds that they are sufficient to warrant a response from Payton.

Next, Pasha makes Eighth Amendment claims against Thompson, Erwin, Payton and Hughes based on allegations that he was denied the ability to purchase low-cut work boots. [*Id.* at ¶¶124-126] However, Nurse Thompson is the only defendant who he claims was personally involved with his inability to purchase low-cut work shoes/boots. According to

Pasha, Thompson refused to allow Dr. Clifford to issue an order allowing him to purchase the footware. [*Id*. at ¶¶85-86, 101, 103-105]

With respect to Erwin, Cochran, Payton and Hughes, Pasha only alleges that these defendants caused him to be transferred from Northpoint to KSR without the shoes and insoles that Dr. Clifford had ordered that he be allowed to wear. [*Id*. at ¶¶126] However, none of these defendants is a medical professional, nor does Pasha make an allegation that either Erwin, Cochran, Payton or Hughes were directly and personally involved in making medical decisions regarding his medical care, including deciding whether he should be permitted to order low-cut work shoes or boots. *See Estate of Young v. Martin*, 70 F. App'x 256, 260-61 (6th Cir. 2003) (plaintiff failed to establish warden's personal involvement in inmate's medical care); *Brock v. Wright*, 315 F.3d 158 (2d Cir. 2003) (absent evidence that warden was medically trained or independently understood allegedly adverse consequences of regional medical director's decision not to refer prisoner for outside treatment, warden was not liable for deliberate indifference to prisoner's medical needs merely for adopting medical director's decision); *Spruill v. Gillis*, 372 F.3d 218, 236 (3rd Cir. 2004) ("If a prisoner is under the care of medical experts...a non-medical prison official will generally be justified in believing that the prisoner is in capable hands."); *Coleman v. Lappin*, No. 6: 10-CV-186-GFVT, 2011 WL 4591092, at *6-7 (E.D. Ky. 2011) (collecting cases).

While Pasha's allegations regarding the denial of work shoes/boots are sufficient to warrant a response from Thompson, [Record No. 1 at ¶¶124-125] the Court will dismiss this claim against Erwin, Cochran, Payton and Hughes. [*Id*. at ¶126] Likewise, the Court will dismiss Pasha's Eighth Amendment claims against Erwin, Cochran, Payton and Hughes alleging that these defendants were deliberately indifferent to his serious medical needs

because they caused him to be transferred from Northpoint to KSR without his prescription medication and his hearing device. [*Id*. at ¶126] Again, none of these defendants is a medical professional and Pasha makes no allegation that any of these defendants were directly or personally involved in any decisions regarding his medical care, including allegedly denying Pasha access to prescription medication or a hearing device. Likewise, Pasha does not allege that any of these individuals was actually aware of a substantial risk that Pasha would suffer serious harm because he would be transferred without his prescription medication or hearing device and knowingly disregarded that risk by transferring him anyway. Thus, Pasha has failed to allege facts giving rise to an Eighth Amendment deliberate indifference claim against these administrative officials. *Farmer*, 511 U.S. at 837.

Pasha also claims an Eighth Amendment deliberate indifference claim based on his allegations that May and Miller confiscated Pasha's prescription eyeglasses while he was housed in the RHU. [Record No. 1 at ¶¶29, 129] The Court has reviewed these allegations and find that they are sufficient to warrant a response from May and Miller.

Next, Pasha asserts an Eighth Amendment claim alleging that he was denied a medical diet for his irritable bowel syndrome and toxic stomach in deliberate indifference to his serious medical needs. [*Id*. at ¶130] Although it is unclear, this claim appears to be based on his allegations that, due to Pasha's concerns about an increased risk of colon cancer, he declared on July 11, 2018, that he would not eat while housed in RHU unless he was reissued a high protein/low carb diet. [*Id*. at ¶31-32] Pasha further alleges that, on July 30, 2018, after he missed 57 consecutive meals, Dr. Clifford cleared with Clinical Director Burkett to prescribe him the equivalent of a high protein/low carb diet for 30 days, to be renewed. [*Id*. at ¶33] Pasha alleges that the defendants do not have a protocol to prevent refeeding syndrome, and

on July 31, 2018, his body went into shock and he threw-up everything that he ate. [*Id*. at ¶34] He further alleges that on August 2, 2018, although he ate his ninth consecutive meal, the Hunger Strike Committee refused to submit a recommendation to remove Pasha from hunger strike status because they were awaiting his blood test results. [*Id*. at ¶35]

As an initial matter, Pasha's allegations directly contradict his claim that any defendants withheld medical treatment for his stomach conditions related to his self-imposed hunger strike. Rather, they establish that he was considered to be on hunger strike status and would not be removed until his blood test results were returned. Moreover, although he seeks to assert this claim against Thompson, Hughes, Cochran, Erwin and Adams, he does not allege that any of these individuals had any personal involvement with his medical treatment for his stomach conditions or the decisions made regarding treatment during his hunger strike. Attached to Pasha's Complaint are letters that he wrote to Deputy Warden Cochran, Deputy Warden Hughes, Nurse Thompson, Nurse Heather Caldwell, and ARNP Shelli Votaw informing them of the dangers of re-feeding syndrome [Record No. 1-1 at p. 15-19], suggesting that his claim is based on his dissatisfaction with their respective responses to his letters. However, prison officials are not liable under § 1983 for denying or failing to act on grievances. *Grinter,* 532 F.3d at 576.

Because Pasha has failed to allege a claim that any of the particular defendants he names acted with deliberate indifference to his medical needs with respect to his medical condition during and/or immediately after his hunger strike, his claim against these defendants will be dismissed.

C. Claims Based on Responses to Grievances

Pasha makes multiple claims based on allegations that various prison officials failed to respond or inadequately responded to grievances. First, he asserts a claim against Payton, alleging that her finding that Pasha's PREA claim was unsubstantiated, then her later amendment of her findings to "unfounded," violates the First, Eighth and Fourteenth Amendments. [Record No. 1 at ¶123] However, as noted above, prison officials are not liable under § 1983 for denying or failing to act on grievances. *Grinter,* 532 F.3d at 576. *See also Alder v. Corr. Medical Services*, 73 F. App'x 839, 841 (6th Cir. 2003) ("The denial of the grievance is not the same as the denial of a request to receive medical care."). Moreover, Pasha alleges no facts to support his claim that Payton's findings somehow violated his rights under the First, Eighth, and Fourteenth Amendments. Rather, Pasha's claim against Payton appears to be based solely on his disagreement with the findings of her investigation into his PREA claim. However, mere disagreement with her findings does not give rise to a constitutional claim against her in her individual capacity. Thus, Pasha's claim against Payton based on her findings with respect to Pasha's PREA claim [Record No. 1 at ¶123] will be dismissed.

Pasha asserts a claim against KDOC Commissioner Erwin alleging that Erwin's response to Pasha's grievance, specifically his finding that it was Pasha's behavior that triggered an incident, violates the First, Eighth, and Fourteenth Amendments of the United States Constitution. [*Id*. at ¶127] He also claims that Erwin's failure to enforce a health care grievance committee's recommendations regarding Pasha's dentures and his low-cut work shoes and insoles constitutes deliberate indifference to his serious medical needs in violation of the First, Eighth, and Fourteenth Amendments. [*Id*. at ¶131-132]

Again, however, Pasha does not allege that Erwin had any personal involvement in Pasha's medical care, which is necessary to sustain a constitutional claim against Erwin in his

individual capacity. *Nwaebo*, 83 F. App'x at 86 (*citing Rizzo v. Goode*, 423 U.S. 362, 373-77 (1976)). Rather, it appears that Pasha is attempting to impose liability on Erwin because he is the Commissioner of the KDOC. But the mere fact of supervisory capacity is not enough: respondeat superior is not an available theory of liability. *Polk County*, 454 U.S. at 325-26. Further, Erwin is not liable under § 1983 for denying or failing to act on Pasha's grievances. *Grinter,* 532 F.3d at 576. Accordingly, Pasha's claims against Erwin based on Erwin's responses to Pasha's grievances [Record No. 1 at ¶¶127, 131, 132] will be dismissed.

    D. Pasha's Claim Based on his Transfer to KSP

Pasha asserts a claim against Erwin, Cochran, Payton, Thompson, Hughes, and Adams alleging that his transfer to KSP, a maximum-security facility, with a custody score of eight, was in retaliation for filing a PREA Complaint against staff. [Record No. 1 at ¶111] According to Pasha, this was done in violation of his rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution. However, an inmate has no liberty interest in being placed in any particular penal institution, *Olim v. Wakinekona*, 461 U.S. 238, 247 (1983), or classified at any particular security level, *Hewitt v. Helms*, 459 U.S. 460, 468 (1983), overruled in part on other grounds by *Sandin v. Conner*, 515 U.S. 472 (1995), and hence no rights protected by the Due Process Clause in that regard. *Sandin*, 515 U.S. at 484-86. *See also Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("... the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement.") (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)); *Harris v. Truesdell*, 79 F. App'x 756, 759 (6th Cir. 2003).

To the extent that Pasha claims that his transfer implicates the Eighth Amendment, he fails to allege any facts supporting a claim that his prison transfer, in and of itself, constitutes

"cruel and unusual" punishment. Similarly, to the extent that he alleges that his transfer was retaliatory in violation of the First Amendment, he alleges no facts that lend any support to this conclusion whatsoever. To succeed on a retaliation claim, the plaintiff must demonstrate that:

> (1) the plaintiff engaged in protected conduct;
>
> (2) the defendant took action against the plaintiff sufficiently adverse to deter a person of ordinary firmness from continuing to engage in that conduct; and
>
> (3) the defendant's adverse action was motivated at least in part by the plaintiff's protected conduct.

*King v. Zamiara*, 680 F.3d 686, 694 (6th Cir. 2012).

Pasha does not allege any facts to support the notion that his transfer was motivated by animus occasioned by his filing of a PREA claim. And mere correlation does not unequivocally imply causation: courts have stressed that while temporal proximity between the protected conduct and the allegedly retaliatory act may provide indirect evidence of the defendant's motive to retaliate, *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004), it is usually coupled by other indicators of intent, such as a history of antagonism between the parties, *Watson v. Rozum*, 834 F. 3d 417, 422 (3d Cir. 2016), something notably absent here. Rather, Pasha's Complaint appears to attach the word "retaliation" to any action by prison officials with which he disagreed, a form of conclusory pleading that is insufficient to satisfy the minimum pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This remains true even with the additional latitude afforded to *pro se* litigants. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) ("More than bare assertions of legal conclusions is ordinarily required to satisfy federal notice pleading requirements."); *Kamppi v. Ghee*, 208 F.3d 213 (table), 2000 WL 303018, at *1 (6th Cir. May 14, 2000) ("Thus, the less stringent standard for *pro se* plaintiffs

does not compel the courts to conjure up unpleaded facts to support conclusory allegations."). Because Pasha's Complaint fails to allege facts sufficient to support either the second or third required elements, the retaliation claim against Erwin, Cochran, Payton, Thompson, Hughes, and Adams based on his transfer to KSP will be dismissed for failure to state a claim.

E.  Pasha's Claim Based on Assignment of Officer Brown

Finally, Pasha alleges that Erwin, Cochran, and Adams assigned Officer Brown to a duty post in the prison's general population where Brown would be supervising inmates during a time period in which Brown had criminal charges for assault and related offenses pending against him in Boyle County, Kentucky.  [Record No. 1 at ¶112]  According to Pasha, this constitutes cruel and unusual punishment against him without due process of law in violation of the Eighth and Fourteenth Amendments.  [*Id*.] However, to establish a claim that a defendant acted with deliberate indifference by failing to properly hire, train, or supervise its employees, "[a] showing of simple or even heightened negligence will not suffice."  *Doe v. Patton*, 381 F. Supp. 2d 595, 601 (E.D. Ky. 2005) (internal quotation marks and citation omitted), *aff'd sub nom. Doe v. Magoffin Cty. Fiscal Court*, 174 F. App'x 962 (6th Cir. 2006).  Instead, "[a] supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016).  Accordingly, a complaint asserting such a claim must plead facts setting forth the incident complained of and the supervisory official's role in it with sufficient particularity to state a claim.  Where a complaint "is devoid of any allegations identifying the allegedly deficient policy, how existing policies and procedures are inadequate or otherwise place inmates' serious medical needs at risk, or [defendant's] awareness of the deficiency in existing

policy and the risk it posed[,]" the complaint fails to state a viable claim for failure to train or supervise. *Dishman v. Correct Care Solutions, LLC*, No. 17-CV-98-HRW, 2018 WL 3097319, at *5 (E.D. Ky. June 22, 2018) (citing *Twombly*, 550 U.S. at 555).

Here, Pasha makes no allegation that either Adams or Erwin had any knowledge of Brown's psychiatric evaluations and/or any criminal charges pending against Brown. Indeed, Cochran is the only defendant that Pasha alleges was aware of Brown's evaluations and criminal charges. [Record No. 1 at ¶¶76-80] A "failure to train" claim cannot be used as a way of circumventing the rule that supervising officers are not liable for the actions of their subordinates under the doctrine of *respondeat superior*. *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 410 (1997) ("To prevent municipal liability for a hiring decision from collapsing into *respondeat superior* liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged."). Accordingly, the Court will dismiss this claim to the extent that it is alleged against Adams and Erwin. However, a response from Cochran will be required.

F. Pasha's Motions for Psychiatric Evaluation and Temporary Restraining Order

Pasha has filed a motion caption "motion for psychiatric evaluation," in which he requests that the Court order Pasha to undergo a 30-day psychiatric evaluation in a mental health facility to determine his competency to prosecute this civil action and/or to appoint a rape advocate to counsel him. [Record No. 26] Although Pasha purports to seek this relief under Rule 35 of the Federal Rules of Civil Procedure, Rule 35 is a discovery rule, which permits the Court to order a party whose mental or physical condition is in controversy to submit to a physical or mental examination by an independent examiner. Fed. R. Civ. P.

35(a)(1).  It is not a mechanism by which a plaintiff may request that his own competency to pursue his claims may be tested.

To the extent that Pasha's motion seeks the appointment of an advocate and/or counsel, the Court has already considered Pasha's requests for counsel and found that he has demonstrated an ability to address both the substantive and procedural aspects of his claims. [Record No. 11, 22]  Accordingly, the Court has twice considered the matter and determined that Pasha's case does not present the kind of extraordinary circumstances which would warrant the appointment of counsel for the plaintiff.  The Court sees no reason to depart from this conclusion.  Thus, Pasha's motion will be denied.

Pasha has also filed a motion for a temporary restraining order, directing "Erwin and his agents" to cease their refusal to provide Pasha with his medically prescribed shoes and insoles.  [Record No. 27]  However, the Court has already considered and denied a similar motion filed by Pasha.  [Record No. 22]  To the extent that Pasha's most recent motion seeks reconsideration of the Court's prior Order, a court may grant relief under Rule 59(e) only to (1) correct a clear error of law; (2) account for newly discovered evidence; (3) accommodate an intervening change in controlling law; or (4) prevent a manifest injustice.  *American Civil Liberties Union of Ky. v. McCreary Co., Ky.*, 607 F.3d 439, 450 (6th Cir. 2010); *Besser v. Sepanek*, 478 F. App'x 1001, 1001-02 (6th Cir. 2012).  Pasha's motion does not satisfy any of these criteria, but rather attempts to re-argue a request that the Court has already considered and rejected.  Accordingly, Pasha's motion for temporary restraining order [Record No. 27] will be denied.

## III.

Because the Court has granted Pasha *pauper* status, the Clerk's Office and the United States Marshals Service ("USMS") will serve the defendants against whom claims have not dismissed with a Summons and copy of the Complaint on his behalf. Fed. R. Civ. P. 4(c)(3) and 28 U.S.C. § 1915(d). Accordingly, it is hereby

**ORDERED** as follows:

1. Pasha's Amended Complaint [Record No. 14] shall be disregarded and the original Complaint [Record No. 1] shall be construed as the operative pleading in this matter.

2. The Court has reviewed the allegations supporting the following claims asserted in Pasha's original Complaint [Record No. 1] and finds that a response is warranted from the defendants as specified below:

   a. Pasha's Eighth Amendment claim against Defendant Mendalyn Cochran alleged at ¶112;

   b. Pasha's Eighth Amendment claims against Defendants Davis Brown and Brett Shearer alleged at ¶113;

   c. Pasha's Eighth Amendment claims against Defendants Lee N. May and William Miller alleged at ¶115;

   d. Pasha's tort claims against Defendants Brown and Shearer alleged at ¶116;

   e. Pasha's Eighth Amendment claim against Defendant Brown alleged at ¶118;

    f.   Pasha's Eighth Amendment claims against Defendants Michael Long and Rainwater alleged at ¶119;

    g.   Pasha's Eighth Amendment claims against Defendants Long, Rainwater, Brown and Shearer alleged at ¶120;

    h.   Pasha's Eighth Amendment claim against Defendant Jessica Payton alleged at ¶122;

    i.   Pasha's Eighth Amendment claims against Defendant Stephanie Thompson alleged at ¶¶124-126;

    j.   Pasha's Eighth Amendment claim against Defendant James Smith alleged at ¶128.

3.   The remaining claims for relief alleged in Pasha's Complaint [Record No. 1] are **DISMISSED**, without prejudice.

4.   Defendants Michelle Weigel, Margaret Franchere, Pond, James Erwin, Craig Hughes, and Brad Adams are **DISMISSED** from this action.

5.   Pasha's motion for psychiatric evaluation [Record No. 26] is **DENIED**.

6.   Pasha's motion for temporary restraining order [Record No. 27] is **DENIED**.

7.   The Deputy Clerk shall prepare ten (10) "Service Packets" for service upon Defendants Mendalyn Cochran, Davis Brown, Brett Shearer, Lee N. May, William Miller, Michael Long, Mrs. Rainwater, Jessica Payton, Stephanie Thompson, and James Smith. Each Service Packet shall include:

    a.   a completed Summons form;

    b.   the Complaint [Record No. 1];

    c.  the Order severing Plaintiff Seeber's claims from this action [Record No. 7];

    d.  this Order; and

    e.  a completed USM Form 285.

8.  The Deputy Clerk shall deliver the Service Packets to the USMS in Lexington, Kentucky and note the date of delivery in the docket.

9.  The USMS shall make arrangements with the appropriate officials at the Northpoint Training Center to personally serve Defemdants Mendalyn Cochran, Davis Brown, Brett Shearer, Lee N. May, William Miller, Michael Long, Mrs. Rainwater, Jessica Payton, Stephanie Thompson, and James Smith with Service Packets at Northpoint Training Center, 710 Walter Reed Road, Burgin, KY 40310.

10. Pasha must immediately advise the Clerk's Office of any change in his current mailing address. **Failure to do so may result in dismissal of this case**.

11. If Pasha wishes to seek relief from the Court, he must do so by filing a formal motion sent to the Clerk's Office. Every motion Pasha files must include a written certification that he has mailed a copy of it to the defendants or their counsel and state the date of mailing. **The Court will disregard letters sent to the judge's chambers or motions lacking a certificate of service.**

Dated:  February 4, 2019.



Signed By:

_**Danny C. Reeves**_

**United States District Judge**