UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| URIAH MARQUIS PASHA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 18-595-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| JESSICA PAYTON, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Uriah Marquis Pasha instituted this action against certain prison officials at the Northpoint Training Center ("NTC") under 42 U.S.C. § 1983. Originally, he asserted a plethora of claims against multiple defendants. However, the claims that remain pending at this time involve ten defendants who Pasha alleges sexually abused him and violated his Eighth Amendment rights under the United States Constitution.

Pasha has filed two motions for partial summary judgment, Defendant Stephanie Thompson has also moved for summary judgment, and the other remaining defendants have separately moved for summary judgment. This matter was referred to United States Magistrate Judge Edward B. Atkins pursuant to 28 U.S.C. § 636 for issuance of a report and recommendation. Magistrate Judge Atkins issued a Recommended Disposition on the four motions for summary judgment as well as Pasha's motion for an evidentiary hearing. More specifically, he has recommended that the Court deny Pasha's two partial motions for summary judgment, grant Thompson's motion for summary judgment, grant the remaining defendants' motion for summary judgment, and deny Pasha's motion for an evidentiary hearing. Following

the issuance of the Recommended Disposition, Pasha also filed a motion for the issuance of a subpoena duces tecum.

Before addressing the merits of the pending motions, the Court notes that it must make a *de novo* determination of those portions of the Magistrate Judge's recommendation to which objections are made. 28 U.S.C. § 636(b)(1)(C). However, "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 474 U.S. 140, 150 (1985).

Not surprisingly, Pasha has filed objections to the Recommended Disposition. [Record No. 208] First, he contends that his claims were "non-grievable" and, therefore, they should not be dismissed for failure to exhaust his administrative remedies. Further, he complains about previously dismissed official-capacity claims. And he argues that, because he checked the boxes for official capacity and injunctive relief, his claims should not have been dismissed.

Having reviewed the entire record as well as the Magistrate Judge's recommendation, the undersigned agrees that Pasha's motions for partial summary judgment should be denied while the defendants' motions for summary judgment should be granted. Finally, Pasha's motions for an evidentiary hearing and his motion for the issuance of a subpoena duces tecum will be denied.

## I.

Pasha is now confined at Little Sandy Correctional Complex. However, at the time relevant to this action, he was held in state custody at NTC. Pasha was transferred to NTC on April 21, 2018. [Record No. 172, p. 4] Following his arrival, Pasha submitted a healthcare request regarding an ankle deformity and pain in his right side from his shoulder to his feet.

[Record No. 174, p. 5] While much of the treatment Pasha received is not the basis for the present civil action, it is necessary to recount much of the information regarding treatment to put the matter in context for the reader.

Pasha asserted that the "Rx did not follow from LSCC 4-20-18." [*Id.*] Defendant Stephanie Thompson explained that Pasha "need[ed] knock off to wear low cut boots R/T boney deformity on inside of left ankle." [*Id.* at 19-20] He was allowed to wear low cut boots until June 24, 2018. On May 7, 2018, Pasha submitted another healthcare request involving foot pain. [*Id.* at 6] Nurse Dolly Hamlin treated Pasha's foot pain and referred him to a provider. Pasha saw Dr. Angela Clifford on May 14, 2018. He requested Oxford shoes at that time. Pasha alleges that Clifford would not address this request because he had already purchased gym shoes. [Record No. 181-7, p. 15]

Pasha submitted a medical grievance against Clifford for ignoring his request for Oxford shoes and asserted that she violated his Kentucky Constitutional rights. [*Id.*] A second medical grievance was submitted on August 8, 2018, against the NTC Clothing House for refusing to issue new Oxford shoes for his deformed ankle. [Record No. 172-2, p. 68] Pasha believed that the Clothing House was required to provide him with a new pair of Oxford work shoes every year and he requested a mandate requiring that the Clothing House provide him with Oxford work shoes once every 12 months for the remainder of his life sentence. [*Id.*] Thereafter, Pasha received low cut Adidas gym shoes, and the issue was informally resolved. But Pasha then contended that the shoes provided were too narrow. [Record No. 172-2, p. 78]

A hearing was held with the Healthcare Grievance Committee on September 21, 2018. However, the committee found that Pasha did not need special footwear and he would have to purchase the requested shoes himself. [Record No. 172-2, p. 63] Pasha appealed to the Medical

-3-

Director who found that Clifford's recommendation for low cut athletic shoes should be followed. [*Id.*]

Clifford saw Pasha again on August 27, 2018, renewed the request for low cut boots, and concluded that Pasha would need surgery for an ingrown nail. Clifford removed a portion of Pasha's ingrown toenail on September 10, 2018. Pasha also complained of a cold but did not ask for any medicine during this appointment. Clifford again checked Pasha's nail on September 28, 2018. Pasha was allowed to wear shower shoes before and after his ingrown nail surgery (from September 7, 2018, to October 12, 2018) based on directions from Nurse Franchere, Nurse Jai Esha Park, and Dr. Clifford.

Pasha also claimed that Defendant Stephanie Thompson "would not authorize Pasha to purchase his own Low-cut work shoes," on October 12, 2018. However, Thompson contends she told Pasha that the recommendation was only for athletic shoes, not work boots. Pasha further alleges that acquired the cold virus because he was required to wear his shower shoes at work while it was cold.

Pasha also filed a grievance against unnamed NTC nursing staff for causing an infection by using band-aids following his ingrown toenail surgery. [Record No. 172-2, p. 140] He alleged that Clifford had to burn the infection. [*Id.*] Clifford explained that Pasha "had developed excessive granulation tissue at the site of toenail surgery" and she "cauterized the tissue back with silver nitrate." Pasha requested that NTC nurses follow doctors' orders. [Record No. 172-2, p. 140] Dr. Clifford educated the unnamed nurse regarding the issue and the grievance was informally resolved. [*Id.*]

Pasha was recommended to be transferred to the Kentucky State Penitentiary on October 23, 2018. He was evaluated by Nurse Vickie Clemens prior to the transfer. [Record

No. 174, p. 29] Clemens found that Pasha was in fair health at that time and could be transferred. [*Id*.] Thereafter, Pasha was transferred on October 24, 2018, and was medically evaluated upon arrival, where intake notes did not indicate any issue with his medication. [*Id*. at 26]

APRN Kimberly Jernigan examined Pasha on November 1, 2018. During this examination, Pashal requested his hearing aid and low-cut shoes. [*Id*. at 11] Jernigan advised Pasha that she would look into the lost hearing aid advised Pasha to fill out a sick call for low-cut shoes. [*Id*. at 16]

Pasha raises two other incidents (occurring at NTC on July 11, 2018, and August 5, 2018) which are unrelated to his multiple medical grievances. The July 11, 2018, incident concerns a dispute with Library Officer Michelle Weigel. [Record No. 181-2] Pasha claims that Weigel refused to make copies of a statute that he has requested. Thereafter, an argument ensued which resulted in Weigel calling for a yard officer to escort Pasha out of the library. [Record No. 181-2, p. 4] Correctional Sergeant Lee May and Correctional Officer William Miller arrived to remove Pasha. As May and Miller were counseling Pasha in the yard office, Pasha put his hands in Miller's face and directed him to "stop." [Record No. 181-2, p. 1] Pasha was placed in hand restraints and taken to the medical department before being taken to the Restrictive Housing Unit ("RHU") as a result of this incident. [*Id*.]

After leaving the medical department, Miller and May allegedly grabbed Pasha's arms to escort him to the RHU. Miller and May allege that Pasha became argumentative, noncompliant and combative, and pushed May into a partition wall. [Record No. 181-3, p. 2] Pasha, however, claims that he remained compliant during this incident. [Record No. 194]

-5-

Pasha was placed on the ground after he refused to return to the RHU. [Record No. 181-2, p. 6] Safety Coordinator Keith Schneider heard the incident and advised Pasha he would be tased if he did not walk to the RHU. [Record No. 182-2, p. 5] Pasha complied. [Record No. 181-3] Thereafter, Pasha was strip searched and his personal property was inventoried by other officers at the RHU. [Record No. 181, p. 6] Pasha claims that Miller and May "chicken-winged" him (cutting off his air supply) and stole his glasses. [Record No. 194]

The August 5, 2018, incident concerns Pasha's complaints of chest pains while in the RHU. These complaints allegedly were made to Corrections Officer James Smith. [Record No. 181-12] Smith notified Corrections Officer Davis Brown to escort Pasha to the medical department. In response to Pasha's inquiry regarding whether he would be transported using a wheelchair, Smith explained that there were no wheelchairs in the RHU. [Record No. 181-14] Pasha also claims that he asked Brown about using a wheelchair for the transport, but Brown responded that they would walk to the medical department and that he believed Pasha was faking. [Record No. 181-12] Pasha sat down, informing Brown he would not walk to the medical department. [*Id*.] Brown ordered Pasha to get up and then unsuccessfully attempted to pick him up. Brown then requested assistance. [*Id*.] Pasha contends that Brown dragged him from the area. [Record No. 179, p. 6]

Lieutenant Mike Long, Officer Jonathan Pond, Officer Brett Shearer, and Sergeant Allyson Rainwater arrived to assist Brown. [Record No. 181-12] But all attempts to have Pasha stand were unsuccessful. Nurse Franchere later arrived with a wheelchair but was directed to return it to the medical department. [Record No. 142-1, p. 1] Long, Brown, Shearer, and Pond then carried Pasha. [Record No. 142-1, pp. 1-2] Unfortunately, it appears that Pasha's pants did not remain in place while the defendants were transporting him in this

-6-

manner.  [Record No. 181-10]  The officers stopped at least two times in an effort to prevent Pasha's pants from coming off.  However, Pasha asserts that he was sexually assaulted when Brown and Shearer pulled his pants up and touched his bottom.

Eventually, Pasha was admitted to the medical department.  Brown informed the nurses that Pasha had scratched him during the incident.  Franchere observed the scratches and noted that they were superficial.  Brown also requested that Rainwater take photos of the scratches, but Rainwater allegedly observed that Brown "messing with one of the scratches to make it look worse."  [Record No. 181-9, p. 2]  Brown was later terminated from the Kentucky Department of Corrections for manipulating the photograph, using inappropriate language toward another staff member, and engaging in conduct that may endanger others at the facility. [Record No. 181-9, pp. 2-3]

As noted, Pasha filed suit under 42 U.S.C. § 1983 against fifteen prison officials at NTC asserting various constitutional claims.  The plaintiff's original Complaint was filed with a co-defendant, Blaine Seeber, but Seeber's claims have been severed.  Following preliminary review, Pasha was allowed to proceed against ten of the defendants in their individual capacities.  [Record No. 28]  The remaining defendants include: Stephanie Thompson (medical administrator at NTC), Davis Brown (former security officer at NTC), Mendalyn Cochran (deputy warden of Security at NTC), Michael Long (corrections security Lieutenant at NTC), Lee N. May (former Sergeant at NTC), William Miller (former internal affairs officer at NTC), Jessica Payton (administrative section supervisor at NTC), Allyson Rainwater (former corrections security Sergeant at NTC), Brett Shearer (former corrections officer at NTC), and James Smith (former Corrections Officer at NTC). Brown, Cochran, Long, May, Miller,

Payton, Rainwater, Shearer, and Smith collectively proceed as "the KDOC defendants."

[Record No. 181-1, p. 1].

Pasha's remaining claims has been summarized by Magistrate Judge Atkins as follows:

1. Thompson failed to allow Dr. Clifford to issue an order allowing him to purchase appropriate work shoes, and Thompson caused Pasha to be reclassified on October 23, 2018 and be transferred without Dr. Clifford's medication, hearing device, and shoes and insoles;

2. Cochran subjected Pasha to cruel and unusual punishment by allowing Brown to stand post while he had pending criminal charges;

3. May and Miller subjected Pasha to cruel and unusual punishment when they used excessive force on July 11, 2018;

4. Brown and Shearer sexually assaulted Pasha on August 5, 2018;

5. Brown subjected Pasha to excessive force by dragging him on August 5, 2018;

6. Long and Rainwater subjected Pasha to cruel and unusual punishment by failing to use a wheelchair to transport him to the medical unit on August 5, 2018;

7. Long, Rainwater, Brown, and Shearer were deliberately indifferent to Pasha's medical needs when they carried him to the medical department rather than using a wheelchair to transport him on August 5, 2018;

8. Payton was deliberately indifferent to Pasha's medical needs when she denied Natalie O'Hara of the Bluegrass Rape Crisis Center entry into NTC on August 16, 2018;

9. Smith was deliberately indifferent to Pasha's medical needs when he refused to order Brown to take Pasha to the medical unit via a wheelchair on August 5, 2018; and

10. May and Miller were deliberately indifferent to Pasha's medical needs when they confiscated his eyeglasses on July 11, 2018.

[Record No. 205, pp. 7-8]

Pasha previously moved for partial motion for summary judgment against Thompson for alleged violations of the Eighth Amendment to the United States Constitution. [Record No. 108] The Court adopted Magistrate Judge Atkins' recommendation and denied the motion because Pasha failed to offer evidence of a prima facie violation of his Eighth Amendment rights. This matter is currently pending for resolution on the four remaining motions for summary judgment and Pasha's requests for an evidentiary hearing and the issuance of a subpoena duces tecum. Pasha also has filed two motions for partial summary judgment regarding claims of deliberate indifference against Brown, Rainwater, Long, and Shearer. [Record Nos. 142, 179] And Thompson has filed a motion for summary judgment on the remaining deliberate indifference claim against her. [Record No. 172] Finally, the KDOC defendants have filed a motion for summary judgment on the deliberate indifference claim, excessive force claim, and the sexual abuse claim. [Record No. 181]

**II**.

Summary judgment is appropriate if there are no genuine disputes regarding any material facts and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Chao v. Hall Holding Co*., 285 F.3d 415, 424 (6th Cir. 2002). The determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

The moving party carries an initial burden to produce evidence to present a prima facie case that the movant is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 317; *see also Angelo v. Kroger Co*., No. 86-3912, 1987 U.S. App. LEXIS 11965, at *24 (6th Cir. Sept.

3, 1987) ("The burden of production imposed by Rule 56 requires the moving party to make a prima facie showing that it is entitled to summary judgment.") (internal citations omitted)). Once the moving party has met its burden of production, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Keeneland Ass'n, Inc. v. Earnes*, 830 F. Supp. 974, 984 (E.D. Ky. 1993) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).   In deciding whether to grant summary judgment, the Court views all the facts and inferences drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 58.   Finally, the Court acknowledges that *pro se* filings are evaluated under a more lenient standard. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

### III.

#### A.      Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act ("PLRA"), a plaintiff must exhaust administrative remedies before bringing a lawsuit regarding prison conditions.   42 U.S.C. § 1997(e); KRS § 454.415.   "A prisoner exhausts his remedies when he complies with the grievance procedures put forward by his correctional institution."   *Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017).   Prisoners must comply "with an agency's deadlines and other critical procedural rules" to properly exhaust his administrative remedies.   *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).   The administrative procedures required for grievances at NTC are known as the Corrections Policies and Procedures ("CPP").   This matter specifically concerns CPP 14.6.   [Record No. 181-6]   Defendants can prevail on a failure to exhaust defense only if they can demonstrate that "no reasonable jury could find that the plaintiff exhausted his administrative remedies."   *Mattox*, 851 F.3d at 590.

-10-

### i.   Pasha Has Not Exhausted Administrative Remedies Regarding His Deliberate Indifference Claim Against Defendant Thompson.

Pasha alleged that Thompson did not allow Clifford to issue an order permitting him to purchase work shoes and that Thompson caused him to be transferred to without his medication, a hearing aide, and appropriate shoes.  Thompson claims that Pasha failed to exhaust administrative remedies regarding his deliberate indifference claims against her because he did not name or otherwise identify her in any grievance submitted to NTC before filing this lawsuit.  CPP 14.6 requires that a grievance "identify all individuals" to comply with prison grievance procedures.  *See Mattox*, 851 F.3d at 590-91; CPP 14.6(II)(J)(1)(a)(5).  Additionally, Thompson asserts that she was not given adequate notice to respond to the grievances filed by Pasha.  Pasha contends that Thompson was on notice because she is in control of the NTC medical department and that grievance 18-461 placed everyone on notice that he did not have low cut shoes.  [Record No. 178] Further, Pasha claims he exhausted administrative remedies because the grievance coordinator processed, but did not reject, his grievances.  [*Id.*]

CPP 14.6(K) applies to all healthcare grievances.  It states, in relevant part, "[t]he grievant shall include all aspects of the issue and identify all individuals in the 'Brief Statement of the Problem' section of the written grievance so that all problems concerning the issue or individuals may be dealt with during step I."   CPP 14.6(K)(1)(a)(4).  Attempts to resolve the grievance shall originally be done through informal means. CPP 14.6(K)(1)(b).   If the grievance cannot be resolved informally, then a prisoner may request a review by the Health Care Grievance Committee.   CPP 14.6(K)(1)(c)-(K)(2).   A prisoner may then appeal the

Grievance Committee's decision to the Medical Director.  CPP 14.6(K)(2)(g)-(K)(3).  The claim is finally exhausted once the Medical Director issues a disposition.

Pasha filed three relevant medical grievances.  [Record No. 172-2]  First, he filed a grievance against Dr. Clifford when she denied his request for work shoes.  [Record No. 181-7, p. 15]  His second grievance was filed against NTC Clothing House for failing to issue him low top Oxford shoes for work.  [Record No. 181-7, p. 73] And Pasha's third medical grievance was filed against unnamed NTC nursing staff for causing an infection by using band-aids on his ingrown toenail.

To exhaust administrative remedies, Pasha must comply with the applicable procedural rules and this includes "identify all individuals" in the written grievance.  *Woodford*, 548 U.S. at 88.  "[A] plaintiff generally fails to exhaust administrative remedies by failing to include an official's name in a grievance if it is required by the applicable grievance procedures."  *Marshall v. Ohio Dep't of Rehab. & Corr.*, No. 2:14-cv-338, 2017 U.S. Dist. LEXIS 54462, at *25 (S.D. Ohio Apr. 10, 2017) (quoting *Hall v. Warren*, 443 F. App'x 99, 106 (6th Cir. 2011)).   None of the relevant grievances identify Thompson, as required by CPP 14.6(K)(4).

Pasha asserts that she was on notice because she is in control of all medical care at the facility.  But "[i]f generalized dissatisfaction with an inmate's medical care were sufficient to exhaust all possible claims related to that care, then prisoners could bring claims in federal court without ever giving prison staff a fair chance to remedy a prisoner's complaints."  *Mattox*, 851 F.3d at 596.   The idea that Thompson is on notice every single time a medical grievance is submitted to the prison is incredulous.  The undersigned agrees with the magistrate judge that a thorough review of the grievance record demonstrates that Pasha failed to comply with the administrative procedures by not identifying Thompson in the relevant grievances.

Pasha is mistaken when he asserts that the grievance coordinator can waive the exhaustion requirement.  Exhaustion is mandatory, and claims that have not been exhausted cannot be asserted before the Court.  *Jones v. Bock*, 549 U.S. 199, 211 (2007).  But Pasha also contends that only the grievance coordinator can determine whether a grievance complies with the grievance procedures.  Again, however, he is incorrect.  The PLRA grants courts the authority to review compliance with grievance procedures and exhaustion of administrative remedies.  Accordingly, summary judgment in favor of Thompson is appropriate.

### ii.    Pasha Has Not Exhausted His Administrative Remedies Regarding His Eyeglasses Complaint Against Defendants Miller And May.

Pasha filed a grievance against Defendants Miller and May for allegedly stealing his eyeglasses.  In response, Miller and May assert that Pasha did not exhaust this grievance.  They further point out that Pasha did not name Miller in the grievance.

CPP 14.6(J) requires that an NTC inmate submit a written grievance within five days of an incident with the staff.  The parties will attempt to resolve the conflict informally, but if the inmate is unsatisfied with the outcome, he or she can make a written request for a hearing to the Grievance Committee.   CPP 14.6(J)(1)(b). The Grievance Committee makes a recommendation following the hearing, and if the inmate is also unsatisfied with the committee's recommendation, an appeal can be filed with the Warden.  CPP 14.6(J)(2). Further, a prisoner may appeal to the Commissioner of the Department of Corrections if he or she does not agree with the decision by the Warden.  CPP 14.6(J)(4).  A grievance is exhausted when the Commissioner issues a decision.

Pasha's grievance alleged that May improperly took his glasses when he was taken to the RHU, but he failed to name Miller in the submission.  [Record No. 181-7] The matter was

-13-

informally handled when Officer Joshua Burnett investigated and noted that Pasha's glasses were included in his property when he entered the RHU. The Grievance Committee then found that the matter was resolved because the glasses were in Pasha's possession. Pasha then appealed to the Warden who concluded that Pasha's glasses were returned to him. Pasha did not appeal that determination.

Pasha did not appeal the Warden's determination within three days. *Price v. Correct Care Solutions, LLC*, No. 5:18-CV-12-JMH-EBA, 2019 U.S. Dist. LEXIS 82168, at * (E.D. Ky. Apr. 23, 2019) (finding that the plaintiff did not exhaust his administrative remedies when he failed to timely appeal to the Medical Director and his grievances were denied as moot). While he was transferred one day after the decision by the Warden, Pasha could have appointed another inmate to act in his place before he was transferred to appeal the Warden's decision. CPP 14.6 (M)(1). Accordingly, this claim fails because Pasha failed to exhaust his administrative remedies.

### iii.   Pasha Did Not Exhaust Administrative Remedies Regarding His Claim Against Payton.

Pasha alleges that Payton denied Natalie O'Hara of the Bluegrass Rape Crisis Center entry into NTC to see him for mental health treatment. According to Pasha, this conduct constitutes a violation of rights guaranteed to him under the Eighth Amendment. But Pasha did not appear to make any claim against Payton for this reason.

Pasha filed a grievance against Payton for dismissing his PREA complaint for lack of evidence. [Record No. 181-7, p. 101] Payton informed Pasha during an informal resolution that the investigation was incomplete and that she would inform him when the investigation

had concluded.  The Grievance Committee agreed that the investigation was not complete. [*Id*.]  Further, the Warden also agreed with this assessment.  [*Id*. at 102]

Following the Warden's decision, Payton issued an Offender Notification regarding Pasha's sexual abuse claim, finding his allegation to be unsubstantiated.  [Record No. 181-18, p. 19]  Pasha then appealed to the Commissioner, claiming that Payton did not take his allegation seriously and was attempting to cover up the alleged sexual assault.   The Commissioner, however, agreed with Payton's conclusion and  Pasha did not make any other grievance against Payton.

The grievance regarding Payton does not relate to Natalie O'Hara entering NTC.  And because Pasha did not assert a grievance against Payton for the failure to allow O'Hara to enter NTC, he has not exhausted his administrative remedies on this claim.  CPP. 14.6(J) requires that separate grievances "be filed for separate issues and unrelated incidents."   CPP 14.6J(1)(a)(4).  Here, there is no grievance against Payton regarding an alleged failure to allow O'Hara into NTC.  Accordingly, summary judgment is appropriate regarding this claim.

### iv.    Pasha Did Not Exhaust Administrative Remedies Regarding His Claim Against Cochran.

Pasha claims that Cochran violated his Eighth Amendment rights when she allowed Brown to stand a post in the NTC's general population while there were pending criminal charges pending against him in Boyle County.  But Cochran is not named in any grievance relating to Brown.  However, Cochran is listed in two grievances concerning movie selection at the facility.  [Record No. 181-7, pp. 148, 159] As noted above, separate grievances need to be filed for separate issues and a grievant must identify all individuals and aspects of the issue in his or her written grievance.  CPP 14.6(J)(1)(a)(4)-(5).

In summary, because Cochran is not named in any grievance relating to Brown standing post, Pasha has failed to exhaust his administrative remedies on this claim.

**B.      Pasha's Remaining Eighth Amendment Claims**

To state a valid claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) a deprivation of rights secured by the Constitution or the laws of the United States (2) that was committed by a defendant acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). The defendants do not contest the fact that they were acting under the color of state law at the time of the alleged incidents. Accordingly, the focus concerns whether Pasha's constitutional rights were violated as he contends.

**i.      Deliberate Indifference To Serious Medical Needs**

Under the Eighth Amendment, the government must provide incarcerated individuals with necessary medical care. And the failure to provide such care may constitute a violation of the Eighth Amendment. *Harrison v. Ash*, 539 F.3d 510, 517 (6th Cir. 2008). "'Deliberate indifference' by prison officials to an inmate's serious medical needs constitutes 'unnecessary and wanton infliction of pain' in violation of the Eighth Amendment's prohibition against cruel and unusual punishment." *Miller v. Calhoun County*, 408 F.3d 803, 812 (6th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

There is both a subjective and objective component to an Eighth Amendment claim. *Id*. The objective component requires the existence of a "sufficiently serious" medical need, meaning that the inmate demonstrates that he "is incarcerated under conditions imposing a substantial risk of serious harm." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious

that even a lay person would easily recognize the necessity for a doctor's attention.'" *Anthony v. Swanson,* 701 F. App'x 460, 463 (6th Cir. 2017).

Demonstrating a defendant's subjective intent, "requires a showing that a prison official possessed a sufficiently culpable state of mind in denying medical care." *Miller*, 408 F.3d at 813 (internal citations and quotations omitted). "The prison official's state of mind must evince deliberateness tantamount to intent to punish. . . . Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Id.* (internal citations and quotations omitted). The standard is more than "mere negligence, but less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* (internal citations and quotations omitted).

Pasha claims that Brown, Shearer, Long, Rainwater and Smith were deliberately indifferent to his serious medical needs when they carried him to the medical department rather than transporting him using a wheelchair following his complaints of chest pains on August 5, 2018. Pasha received medical treatment after he was carried to the medical department, and as Magistrate Judge Atkins correctly notes, "the issue consequently turns on whether the act of carrying Pasha, instead of using a wheelchair, to transport him to the medical department constituted deliberate indifference to his alleged serious medical needs." [Record No. 205, p. 24]

First, Smith was not involved in the alleged decision to carry Pasha to the medical department. Pasha does not contest this fact. However, he argues that Smith was deliberately indifferent because Smith did not order Brown to escort him in a wheelchair. Smith's affidavit explains that he radioed for assistance to take Pasha to the medical department after Pasha

-17-

complained of chest pains and Brown arrived for the transport. [Record No. 181-14]  Smith explained to Pasha there were no wheelchairs in the RHU and Pasha left the RHU with Brown. Smith had no further participation concerning the incident.

Smith was not deliberately indifferent to Pasha's serious medical needs.  He called for assistance to take Pasha to the medical department and merely explained to Pasha that there were no wheelchairs in the RHU.  Accordingly, there is nothing basis to conclude that Smith was deliberately indifferent to any serious medical need.

Next, although it does not appear that Brown, Shearer, Rainwater, and Long were each involved in deciding to carry Pasha, such actions would not constitute deliberate indifference to Pasha's serious medical needs.  Where, as here, a plaintiff receives some medical treatment, to prevail he must demonstrate that the "medical treatment [was] 'so woefully inadequate as to amount to no treatment at all'" for a Court to second guess medical judgments.  *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)).  In the present case, Pasha was carried to the medical department and was examined for complaints of chest pain.  Minor scratches inflicted while being carried would be insufficient to rise to the level of deliberate indifference to serious medical needs.

Pasha fails to meet the subjective component of the analysis.  To demonstrate deliberate indifference, he must show "deliberateness tantamount to intent to punish."   *Horn by Parks v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994).  And here, there is no indication that the officials were aware of an excessive risk to the inmate's health or safety and disregarded that risk.

Pasha was taken to the medical department without delay and seen by the medical staff. The nursing staff performed an EKG, assessed Pasha, and cleared him to be returned to the

RHU.  The decision to carry Pasha to the medical department, rather than transport him using a wheelchair provided protection and safety to Nurse Franchere and other staff members. Nothwithstanding these actions, Pasha received adequate medical treatment and nothing rises to the level of deliberate indifference to Pasha's serious medical needs.  Accordingly, summary judgment will be granted in favor of the defendants regarding this claim.

### ii.      Excessive Force

"Prison officials [] violate the Eighth Amendment when their offending conduct reflects an unnecessary and wanton infliction of pain." *Cordell v. McKinney*, 759 F.3d 579, 580 (6th Cir. 2014).  "[T]he extent of the injury suffered may suggest whether the use of force was necessary or a wanton infliction of pain." *Shough v. Mgmt. &Training Corp.*, No. 3:15 CV 53, 2018 U.S. Dist. LEXIS 1011, at *14 (S.D. Ohio. Jan 3, 2018) (citing *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

Excessive force, like deliberate indifference to serious medical needs, also has an objective and subjective component.  *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013). "The objective component requires that the pain inflicted to be 'sufficiently serious.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  The subjective component looks at the state of mind of the prison officials and requires the Court to consider "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Cordell*, 759 F.3d at 580 (citing *Hudson*, 503 U.S. at 7).  Prison officials are entitled to deference because they "must make their decisions in haste, under pressure, and frequently without the luxury of a second chance." *Griffin v. Hardrick*, 604 F.3d 949, 954 (6th Cir. 2010) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 557 (6th Cir. 2002)).  In analyzing the subjective component, the Court considers

"such factors as the need for the application of force, the relationship between the need and the amount of force [] used, the extent of the injury inflicted," and "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them." *Whitley*, 475 U.S. at 321 (internal citations omitted).

> **a.    Pasha Has Not Demonstrated That Miller And May Used Excessive Force When Transporting Him To The RHU On July 11, 2018.**

Pasha alleges that Miller and May used excessive force when they escorted him to the RHU by using a "chicken wing technique."  [Record No. 1, ¶ 27]  May and Miller contend, however, that they did not use the "chicken wing technique" to escort him, nor did Pasha allege that his air supply was cut off.  Instead, they explain that each maintained contact with one of Pasha's arms while they escorted him to the RHU in accordance with the prison policy. [Record No. 181-3, 181-4, 181-5]  As noted above, Pasha was escorted to the RHU following a dispute with Wiegel and after putting his hands in Miller's face.  [Record No. 181-2, p. 1] Additionally, Pasha shoved May into a gray divider and refused to walk during the transport. [*Id*.]  Schneider did threaten to tase Pasha after he became non-compliant and combative.

Pasha was assessed when he entered the RHU and had no injuries and voiced no complaints to the nurse.  [Record No. 181-2, p. 12]  May states in his affidavit that he maintained physical contact with Pasha in a manner consistent with training and that he did not use a "chicken-wing" technique while moving the prisoner.  Instead, May contends that he only used force necessary "to maintain control of [Pasha] for the safety of [himself], the other officers, and the institution."  [Record No. 181-3]  Both Miller and Schnieder's affidavits support this version of events.  [Record No. 181-4, pp. 2-3; Record No. 181-5, pp. 2-3]

-20-

There is nothing to indicate that Miller and May's actions while transporting Pasha to the RHU rise to the level of excessive force. And even if Miller and/or May did use a "chicken-wing" technique as Pasha alleges, Pasha does not contend that he suffered any resulting injury. Further, Miller and May were required to balance their safety as well as the safety of others within the institution while attempting to transport a non-compliant and combative Pasha. No evidence has been presented which would indicate that the force used while transporting Pasha was wanton or offended contemporary standards of decency. Further, nothing indicates that the force used stemmed from a malicious or sadistic state of mind. Accordingly, summary judgment will be granted in favor of May and Miller regarding this claim.

**b.     Brown Did Not Subject Pasha To Excessive Force.**

Pasha also alleges that Brown used excessive force by dragged him from the RHU. Conversely, Brown claims that he did not "drag" Pasha, but merely tried to help him up after Pasha sat down and refused to walk. [Record No. 181-10, p. 2]

Although Brown was terminated for his conduct on August 5, 2018, the basis for the termination did not involve dragging Pasha during the incident in question. [Record No. 181-9] Warden Brad Adams has submitted an affidavit explaining that he conducted an investigation of the incident on August 5, 2018, and concluded that the evidence did not indicate that "Brown dragged, or otherwise assaulted Inmate Pasha." [Record No. 181-11] And while Pasha alleges that he was dragged, medical records indicate that Pasha suffered only two small abrasions to his left elbow and one small abrasion to his right elbow. [Record No. 183, p. 7; Record No. 181-12, pp. 17-19] Additionally, Pasha never asserted that the abrasions were the result of the alleged dragging.

-21-

The Eighth Amendment "excludes from constitutional recognition *de minimis* use of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9-10 (quoting *Whitley*, 475 U.S. at 327).   And while a serious injury is not required to demonstrate an excessive force claim, "[t]he extent of injury may also provide some indication of the amount of force applied." *Wilkins v. Gaddy*, 559 U.S. 34, 37, 39 (2010) (quoting *Hudson*, 503 U.S. at 7).   Three small abrasions are an indication that unreasonable force was not applied.   Further, Pasha refused to walk, and "active resistance to an officer's command can legitimize" higher levels of force. *Hanson v. Madison Cty. Det. Ctr.*, 736 F. App'x 521, 531 (6th Cir. 2018) (citing *Goodwin v. City of Painesville*, 781 F.3d 314, 323 (6th Cir. 2015)).   The minor abrasions reflect that Pasha suffered no more than *de minimis* physical injuries, and a prisoner must show more to establish excessive force. Accordingly, summary judgment will be granted in favor of Brown on this claim.

### C.      The Tort Claim Alleging Sexual Abuse

Pasha claims that he was sexually abused by Brown and Shearer when they carried him to the medical unit on August 5, 2018.  More specifically, he contends that he "felt something touch his anus, constituting Sexual Abuse due to the fact that Pasha was in fivepoint restraints which caused him to be physically helpless [and] unable to give consent." [Record No. 1]

In Kentucky, "[a] person is guilty of sexual abuse in the first degree when . . . he or she subjects another person to sexual contact who is incapable of consent because he or she . . . is physically helpless."  KRS § 510.110(1)(b).  Further, "[a] person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation."  KRS § 446.070.

-22-

"Kentucky has codified the common law negligence *per se* doctrine and created an avenue by which an individual may seek relief even where a statute does not specifically provide a private remedy."  *Vanhook v. Somerset Health Facilities, LP*, 67 F. Supp. 3d 810, 817 (E.D. Ky. 2014).  KRS § 446.070 applies when an alleged offender violates a Kentucky statute that is penal in nature, the statute does not provide a remedy for the injured party, and the victim is within the class of persons the statute is designed to protect. *See Hargis v. Baize*, 168 S.W.3d 36, 40 (Ky. 2005); *Griffith v. Kuester*, 780 F. Supp. 2d 536, 547 (E.D. Ky. 2011).

Assuming (without deciding) that Pasha can recover under a negligence *per se* theory, he cannot show that there is a genuine issue of material fact regarding his sexual abuse claim. The undersigned agrees with Magistrate Judge Atkins that Pasha's claim that Shearer and Brown touched his bottom when they pulled up his pants "does not show that the [alleged] touching was done 'for purposes of gratifying the sexual desire of either party.'"  [Record No. 205, p. 36 (quoting KRS § 510.010(7)).]

Pasha asserts that he was sexually abused when Brown and Shearer touched his anus while he was being carried to the medical department.  But again, Brown and Shearer deny touching Pasha in a sexual manner as outlined in their respective affidavits.  [Record No. 181-10, p. 3; Record No. 181-17, p. 3]  Additionally, a Prison Rape Elimination Act ("PREA") complaint was filed and the investigation concluded that his complaints of sexual abuse were unfounded.  [Record No. 181-18]  The report noted that the evidence did not show anything inappropriate or intentional occurred.  [*Id*. at 3] And Pasha has not offered any evidence creating a genuine issue of material fact that the alleged touching was done "for purposes of gratifying the sexual desire of either party."  KRS § 510.010(7).  Accordingly, the defendants are entitled to summary judgment regarding this claim.

-23-

### D.        Pasha's Objections

Pasha submitted objections asserting that inmates cannot be required to exhaust administrative remedies if a complaint is non-grievable.  Further, he continues to complain that he intended to sue the officials in their official capacities and that these claims should not have been dismissed.  While Pasha is correct that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues, there is nothing in the record to indicate that the unexhausted claims were treated as non-grievable by the prison officials. *Owens v. Keeling*, 461 F.3d 763, 769 (6th Cir. 2006).  "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The claims brought by Pasha revolve around prison life and the prison grievance procedure was not unavailable to Pasha for his claims at issue in this lawsuit.    Additionally, Pasha previously argued that the administrative procedures were waived by the grievance coordinators. However, exhaustion is mandatory and claims that have not been exhausted cannot be asserted before the Court. *Jones*, 549 U.S. at 211.  Accordingly, this objection will be overruled.

Pasha also continues to assert that his claims brought against defendants in their "official capacity" were dismissed because of bias.  Again, he is incorrect.  The additional claims were dismissed upon initial review of the Complaint because a claim against a state officer is actually a claim directly against the state agency and KDOC cannot be subject to suit under § 1983.  [Record No. 28]  Accordingly, the claims were properly dismissed upon initial review, and this objection will be overruled.

-24-

**IV.**

Pasha has asked for an evidentiary hearing to review prison security video regarding the alleged incident occurring August 5, 2018.  [Record No. 200]  He alleges that the video footage of the in which "the Defendants dropped him on his head and left him hanging upside-down with his feet resting on Defendant Shearer'[s] upper body."  [*Id.*]  Thompson responded and noted that the alleged incident does not relate to her claims and she is not in possession, custody, or control of the video footage.  [Record No. 204]  Next, the KDOC defendants filed a response, asserting that the motion should be denied because the footage is the property of the KDOC and the collective defendants are only sued in their individual capacities. Therefore, they do not have the footage in their possession, custody, or control in their individual capacities.  [Record No. 203]

The undersigned agrees with Magistrate Judge Atkins that, even viewing the facts in the light most favorable to Pasha, he cannot show that the actions of the defendants rise to the level of an Eighth Amendment violation.  Additionally, Pasha had the chance to conduct discovery prior summary judgment motions being filed.  When he attempted to get the video footage, he was informed that none of the defendants could provide it to him because it was in the possession of the Kentucky Department of Corrections.  Accordingly, his request for an evidentiary hearing will be denied.

Finally, Pasha has filed a motion for the issuance of a subpoena duces tecum.  However, in light of the above rulings, there is no need to issue a subpoena duces tecum.  Therefore, this motion will be denied.

**V.**

For the reasons discussed in this Memorandum Opinion and Order, it is hereby

**ORDERED** as follows:

1.      Magistrate Judge Atkins' Recommended Disposition [Record No. 205] is **ADOPTED** and **INCORPORATED** here by reference.

2.      Plaintiff Uriah Marquis Pasha's partial motions for summary judgment [Record Nos. 142, 179] are **DENIED**.

3.      Plaintiff Pasha's motion for evidentiary hearing to review video footage [Record No. 200] is **DENIED**.

4.      Defendant Stephanie Thompson's motion for summary judgment [Record No. 172] is **GRANTED**.

5.      The KDOC defendants' motion for summary judgment [Record No. 181] is **GRANTED**.

6.      Plaintiff Pasha's motion for the issuance of a subpoena duces tecum [Record No. 206] is **DENIED**.

7.      Plaintiff Pasha's objections to the Recommended Disposition [Record No. 208] are **OVERRULED**.

8.      Plaintiff Pasha's claims are **DISMISSED**, with prejudice.

Dated: April 24, 2020.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky

-26-